RECEIVED
DEC 28 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TIMOTHY FERRIER | CIVIL ACTION NO. 04-2423 |
| versus | JUDGE HICKS<br>**REFERRED TO:** |
| COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

### Introduction

Timothy Ferrier ("Plaintiff") was 47 years old when ALJ Charles Lindsay issued a decision denying a claim for disability benefits. Plaintiff has a twelfth grade education and past work experience that includes employment as a carpenter, scaffold builder, welder and produce manager. His claim for disability is related primarily to back, knee and shoulder problems.

The Appeals Council denied a request for review. Plaintiff then filed this civil action seeking the limited judicial review permitted by 42 U.S.C. § 405(g). The parties filed written consent to have the case decided by a magistrate judge, so the case was referred to the undersigned pursuant to 28 U.S.C. § 636(c) and a standing order of the district court regarding social security cases.

## The ALJ's Decision

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff was not working (step one) and suffered from degenerative disk disease of the lumbar spine and left knee, as well as impingement syndrome of the left shoulder. Those impairments were deemed severe within the meaning of the regulations (step two) but not severe enough to meet or equal a listed impairment (step three).

The ALJ conducted a thorough review of the medical records and several reports in the record, and he assessed Plaintiff's credibility. He then concluded that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work, reduced by a requirement that Plaintiff must be able to sit or stand at his option, not be required to perform repetitive overhead lifting, crawling, or climbing, and that Plaintiff be permitted occasional use of a cane for ambulation.

The ALJ then decided that Plaintiff could not return to his past relevant work (step four) because the prior jobs were in the medium to heavy range. Because Plaintiff had non-exertional limitations, the ALJ called upon a vocational expert ("VE") to provide testimony relevant to step five, which asks whether the claimant is capable of performing the demands of other jobs that exist in significant numbers in the economy. VE Joni Crayton testified that

a person with the RFC found by the ALJ was capable of performing jobs such as cashier-order clerk, clerk-charge account or clerk-call out operator. The ALJ accepted that testimony and found that Plaintiff was not disabled.

**Issues on Appeal**

Plaintiff lists three errors in his brief to the court. He complains that the ALJ (1) did not give proper weight to the opinions of treating physicians, (2) failed to consider VE testimony that favored Plaintiff, and (3) erred in finding that there are jobs available in significant numbers that Plaintiff could maintain.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Treating Physicians**

The medical evidence showed that Plaintiff had a compression fracture at L1 in 1979. No surgery was required, and Plaintiff recovered and returned to work until December 2000,

when he was fired from his job. Plaintiff also had a history of left knee problems that included arthroscopic surgery in 2000 and a cortisone injection in 2002. The ALJ conducted a detailed discussion of the medical history related to these problems at Tr. 18-20, and Plaintiff does not point to any errors or omissions in that discussion.

Dr. John Sandifer conducted an examination in October 2002 that included specific findings about the work activities Plaintiff could perform despite his limitations. He concluded that Plaintiff could not do repetitive overhead lifting at all with the left shoulder and that below-shoulder level lifting should be restricted to no more than ten to fifteen pounds. Plaintiff could sit for 30-45 minutes at a time and up to four hours in an eight-hour day. He "probably does need to use a cane the majority of the time to help with standing, balancing and for ambulatory purposes." Plaintiff was also deemed to have difficulty operating a foot control repetitively with the left leg. Dr. Sandifer opined that Plaintiff could stand for thirty minutes at a time and up to three hours in an eight-hour day. He was also limited from performing repetitive stooping, crawling or climbing activities. Tr. 244-45. The RFC found by the ALJ is consistent with and supported by those findings. The ALJ did find, slightly contrary to the Dr. Sandifer, that Plaintiff had only an occasional need to use a cane for ambulation, but he explained that there was no objective evidence to prove the cane was medically prescribed or required.

Dr. Jackie Huckabay wrote a letter in March 2003 regarding Plaintiff's health. He stated that he had been the family physician for Plaintiff from approximately 1979 through

1998, but he admitted that he had "not checked [Plaintiff] physically from a medical aspect since 1998." Dr. Huckabay generally described Plaintiff's history of knee and back problems and stated: "It is my opinion that he is disabled although there is some lack of objective findings." He added that Plaintiff was depressed by his situation and that Plaintiff "is disabled." Tr. 247.

Dr. Robert Hernandez wrote a similar letter, stating that he had provided medical services to Plaintiff for the past several years. He stated that Plaintiff continued to be seen in his office and demonstrated "marked disability, and having to ambulate with a cane because of gait instability, in addition to suffering daily pain in his left knee and lower back." He also noted Plaintiff's shoulder injury that limited his above-the-waist lifting, and he suggested that an evaluation had demonstrated a shortcoming in Plaintiff's academic abilities. He concluded that Plaintiff is "unable to obtain even sedentary employment at this time." Tr. 249.

Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990). Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good

cause exceptions that have been recognized include statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Scott, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id. See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ said that he could not afford "any weight" to Dr. Huckabay's letter because there was no objective evidence submitted to indicate Dr. Huckabay had ever examined the claimant. And the suggestion of a psychiatric impairment in the letter was contradicted by Plaintiff's denial of such an impairment. The ALJ noted that Dr. Hernandez had not examined the Plaintiff for almost two years prior to his letter and that, at that time, Plaintiff had no documented ataxia (unsteadiness in the use of limbs). He also discounted Dr. Hernandez's statement about academic shortcomings, observing that Plaintiff graduated high school after attending regular classes and never alleged any such problems.

The ALJ gave sound reasons for and was justified in his election to discount the weight of the opinions from Dr. Huckabay and Dr. Hernandez. Both opinions suffered from a lack of actual treating history in recent years (if at all) for the problems at issue, conflicted with other more specific medical evidence and opinions, and included statements that were merely conclusory. The ultimate conclusion of whether medical problems and limitations mean that a claimant is or is not "disabled" is reserved to the Commissioner. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003). What is important in a physician's report are

his findings and opinions about the claimant's health problems and the particular limitations (standing, reaching, lifting etc.) they impose. The ALJ then has the duty to decide whether those limitations render the claimant disabled within the meaning of the law. The ALJ articulated good cause for the weight he afforded the relevant submissions from Dr. Hernandez and Dr. Huckabay.

**VE Testimony**

The ALJ presented written questions to the VE. He asked her to assume an RFC consistent with that he found for Plaintiff and report whether jobs exist in the economy that can be performed by such a person. The VE identified the jobs mentioned above. Tr. 115-18. Plaintiff's counsel requested an opportunity to cross-examine the VE, and a hearing was held. Tr. 287-96. The VE made clear that the jobs she identified took into consideration the need for alternative sitting and standing at the employee's option, and the number of jobs that she identified took into consideration that requirement Tr. 290-91. Plaintiff asked the VE to assume other limitations, such as the need for regular absences to obtain methadone treatment.

Testimony from a VE may provide substantial evidence with respect to the inquiries at step five, but reversal may be required if the ALJ poses a defective hypothetical question to the VE. "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the

ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand." Bolling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). See also Boyd v. Apfel, 239 F.3d 698, 707 (5th Cir. 2001).

Plaintiff contends that the ALJ's question to the VE did not reflect the "real" limitations of Plaintiff. That argument is, in essence, a challenge to the RFC found by the ALJ. The report from Dr. Sandifer and the other evidence, as analyzed and weighed by the ALJ, lend more than substantial evidence to support the RFC finding.

Counsel posed a number of questions to the VE that asked that she assume the claimant was taking medication that would make him fall asleep and that excessive absences would be required for methadone treatment, but his brief does not point to record evidence to support such suggestions. Plaintiff did testify that he has been taking methadone for years (Tr. 283-84), but there was no testimony about the treatment regimen and whether it would require absence from work on a frequent basis. Plaintiff has also failed to point to any evidence regarding medications that would make him fall asleep on the job. For these reasons, the VE's answers to those hypothetical questions do not undermine the ALJ's decision. The ALJ's question to the VE included all limitations that he found were supported by the evidence, and the question was not required to include the unsupported limitations

suggested by Plaintiff. The VE's testimony provided substantial evidence for the step five decision.

**Maintaining Work**

Plaintiff urges that the ALJ erred in finding that there were jobs available that he could maintain. Plaintiff's argument about maintaining work invokes the Fifth Circuit's Singletary decision, which interpreted disability under the Act to apply to cases in which a person is capable of working for short periods but can not *maintain* a job because his impairment flares up too often. Singletary does not, however, require every decision by an ALJ include a separate finding regarding the claimant's ability to maintain a job. Frank v. Barnhart, 326 F.3d 618, 621 (5th Cir. 2003).

An ALJ's finding that a claimant can perform a certain level of work (such as sedentary work in this case) necessarily includes a finding that he is able to perform at that level not just intermittently but eight hours a day, five days a week. A separate and express finding regarding maintaining work is required only when the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." Id. See also Dunbar v. Barnhart, 330 F.3d 670 (5th Cir. 2003). The ALJ's basic decision with respect to disability was upheld above, and there is no indication in this record that a separate finding with regard to maintaining employment was required. Plaintiff's problems appear to be constant in nature rather than the kind of condition that waxes and wanes or only flares up from time to time.

**Conclusion**

For the reasons stated above, the ALJ's decision is supported by substantial evidence and must be affirmed. A judgment will be entered consistent with this ruling.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 28 day of December, 2005.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE